**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 02-M-1662-(MJW)

ROBERT HUNTSMAN and
CLEAN FLICKS OF COLORADO, L.L.C.

 Plaintiffs,

and

FAMILY SHIELD TECHNOLOGIES, LLC,
CLEARPLAY INC., and
TRILOGY STUDIOS, INC., et al.

 Counterclaim-Defendants,

v.

STEVEN SODERBERGH,
ROBERT ALTMAN, et al.

 Defendants and Counterclaimants

and

THE DIRECTORS GUILD OF AMERICA,

 Defendant in Intervention and Counterclaimant in Intervention.
_____

**FAMILY SHIELD'S SUR-REPLY TO STUDIOS REPLY TO FAMILY SHIELD'S
RESPONSE TO 5/16/05 ORDER TO ADDRESS EFFECT OF NEW LEGISLATION**
_____

 Family Shield Technologies, LLC, ("Family Shield"), by its attorneys Shughart Thomson & Kilroy, P.C., submits this short sur-reply to the Studios' July 1, 2005 Reply to Family Shield's June 15, 2005 submission regarding the effect of the Family Entertainment and Copyright Act of 2005 upon this action.

The parties agree that the new legislation renders this action moot. The parties disagree as to whether the Court may nonetheless retain jurisdiction to award Family Shield its attorney fees incurred prior to the Family Movie Act's passage under the available fee-shifting statutes.

The copyright and trademark fee shifting statutes provide for fee awards to a "prevailing party." 17 U.S.C. § 505; 15 U.S.C. § 1117(a)(3). Until recently, there would have been no question that Family Shield would qualify as a prevailing party in this action under the familiar "catalyst" theory of fee shifting, applied to numerous federal "prevailing party" fee-shifting statutes such as 42 U.S.C. § 1988. The catalyst theory permits fee shifting even if the case becomes moot before judgment or other court action, so long as the institution of the lawsuit caused contributed to the resulting change in legal relationships that mooted the case. *E.g. Sinajini v. Board of Educ. of San Juan School Dist.*, 233 F.3d 1236, 1241 (10th Cir. 2000). The extensive review of the legislative history of the Family Movie Act in ClearPlay's June 14, 2005 submission leaves no doubt that this lawsuit acted as a catalyst in Congress' passage of the new legislation that vindicated the Player Control Parties' position and ended this case.

The Studios correctly note, however, that the catalyst theory of prevailing party was recently rejected in *Buckhannon Board & Care Home, Inc. v. W.Va. Dept. of Health and Human Services*, 532 U.S. 598 (2001). There, the Supreme Court decided that the typical catalyst situation – where a defendant decides to voluntarily conform its conduct to existing law in light of the lawsuit – does not make the plaintiff a prevailing party because a voluntary change in position may not be legally enforceable. 532 U.S. at 605. Because it ordinarily takes judicial action of some sort (a judgment or court-enforced consent decree) to create an <u>enforceable</u> new legal relationship between the parties, the Court limited prevailing party status to those situations where a court has given its formal imprimatur to the change:

> A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties.

532 U.S. at 605.

The Studios argue that because here the Court has never ruled on the Player Control Parties' pending summary motions, and because none of the parties ever sought or obtained any preliminary injunctive relief, there is no merits ruling or other "judicial imprimatur" that can confer prevailing party status on the Player Control Parties. The Studios' analysis ignores that this unique case contains its own unique type of imprimatur: Congressional imprimatur.

In stating the new general rule for determining prevailing party status, the *Buckhannon* Court chose judicial imprimatur as its criterion because judges normally decide cases. Without a judge's involvement, any voluntary change in the legal relationship between the parties would presumably be unenforceable. It is this requirement of an enforceable legal change in the parties' relationship that underlies *Buckhannon*'s requirement that a party obtain a judicial ruling or blessing of some sort to be deemed a prevailing party. *Buckhannon*, 532 U.S. at 604 (fee shifting proper where there has been a "material alteration of the legal relationship of the parties"). There is nothing in *Buckhannon* that requires the enforceability to come from judicial action – only the presumption that the legal relationships among parties to a lawsuit are ordinarily rearranged by judicial action.

Here, this Court did not decide the merits of action. While the Player Control Parties' summary judgment motions were pending, Congress itself stepped in and enforceably rearranged the parties' legal relationships. In this unique situation, the *Buckhannon* requirement is satisfied

by Congressional action that recognizes the Player Control Parties, including Family Shield, as the prevailing parties in this action.

The legislative history of the Family Movie Act unequivocally shows that Congress was aware of this action and agreed with the Player Control Parties' position that their technologies were not infringing.  *See* H.R. Rep. 109-33 at 5 ("The Committee strongly believes that, subject to certain conditions, copyright and trademark law should not be used to limit a parent's right to control what their children watch in the privacy of their own home.") attached as Ex. B to ClearPlay's June 14, 2005 submission.

The Committee report notes Congress' reliance on the authoritative testimony of the Register of Copyrights that the Player Control Parties' technologies obviously did not constitute copyright or trademark infringement.  *Id.* ("Testimony provided by the Register on June 14, 2004 makes clear that some parties to [this lawsuit] should not face liability for their actions."). Indeed, the Register urged Congress not to pass the Family Movie Act because she felt the new law was unnecessary.  *Id.* at Ex. C, p. 7 (Register of Copyrights testifying: "I believe both the [Player Control Parties'] conduct and the technology should be lawful, but I also believe that such conduct is already lawful.").

Congress passed the Family Movie Act anyway in order to eliminate any doubt that the Player Control Parties' technology is not infringement.  *Id.* at Ex. B, p. 5 ("The 'Family Movie Act clarifies the liability, <u>if any</u>, for the companies that are a party to this case [*i.e. this* case] and to other companies not a party to this case that may be interested in providing such services in the future.) (emphasis added).  While confirming that the Player Control Parties' technologies are legal, Congress also expressed its view that the Mechanical Editing Parties' practices are illegal.  *Id.* at 7 ("The Committee is Aware of services and companies that create fixed derivative

1738870.1                                                        4

copies of motion pictures and believes that such practices are illegal under the Copyright Act.") The Committee even commented that one reason for passing the legislation was because of the threat that this lawsuit posed to small companies like Family Shield trying to build a businesses based on clearly legal technologies. *Id.* at 7 ("Had some of the parties to [this] litigation have been more willing to act in good faith and resolve their differences out of court, the need for this legislation for at least one party would have been eliminated.")

The Family Move Act's legislative history thus establishes in no uncertain terms that Congress viewed the Player Control Parties as the prevailing parties in this litigation:

- Congress was aware of this lawsuit;

- Congress acted in response to this lawsuit;

- Congress agreed with the Player Control Parties' position that their technologies did not constitute copyright or trademark infringement;

- Congress enacted the Family Movie Act to remove any doubt that these technologies were non-infringing; and

- Congress even commented that it was taking the extraordinary step of clarifying federal law (instead of waiting for this Court to act) in part to insure that small business (like Family Shield) do not continue to be destroyed by drawn out litigation.

Thus, while in the normal case the status of prevailing party would be conferred by judicial imprimatur, in this unique case the Player Control Parties' status as prevailing parties is established by Congressional imprimatur. This case thus satisfies the *Buckhannon* test for making the Player Control Parties prevailing parties: their legal relationship with the Studios and Directors has been changed as a result of this litigation, and that change is enforceable – not by virtue of a judgment or decree, but because Congress itself changed the law. Congress actually took sides in this litigation and used its legislative power to determine the prevailing parties – an

1738870.1                                              5

act that mooted this case and thereby prevents this Court from using its judicial power to make that same determination.[1]

With the Player Control Parties' status as prevailing parties established by Congress, the question of fee shifting moves to the merits of the parties' positions, *i.e.* whether the Studios' and Directors' positions in this litigation were unreasonable or unfounded. *E.g. Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994) (factors for fee shifting in copyright include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case)"); *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 524 (D.C. Cir. 1985) (purpose of trademark's fee shifting statute is to make plaintiffs whole, or to protect defendants against "unfounded suits" brought by trademark owners). The objective unreasonableness of the Studios' and Directors' positions in this litigation has been extensively reviewed in Family Shield's June 15, 2005 submission, and need not be reiterated here. The Court can make this determination from the existing summary judgment briefs, and thus need not engage in a "second major litigation." *Bravos v. E.P.A.*, 324 F.3d 1166, 1175 (10th Cir. 2003), quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Family Shield has also requested fees under 28 U.S.C. § 1927 for the Studios' and Directors' conduct in unreasonably initiating and continuing these proceedings against the Player Control Parties in general, and against Family Shield in particular. The application of this statute

---

[1] Justice Scalia concludes his concurring opinion in *Buckhannon* by observing that Congress may of course revise federal fee shifting statutes to better accommodate situations where a case becomes moot before a judicial determination of the prevailing party; and if Congress were to do so the obvious criterion would be a court determination that "there was at least a substantial likelihood that the party requesting fees would have prevailed." 532 U.S. at 622. Family Shield's June 15, 2005 submission argued for fees on this basis – it would have won a summary judgment had the Court ruled on its pending motion. Because the Studios have raised *Buckhannon* and the absence of a judicial ruling as a bar to fees, Family Shield submits this sur-

is not affected by "prevailing party" analysis or mootness, but stems from this Court's inherent authority to control proceedings and deter baseless litigation. The simple fact that the Studios and Directors have appeared and asserted unreasonable positions in this action is enough to permit the Court to consider a fee award under 28 U.S.C. § 1927.

WHEREFORE, Family Shield requests that the Court award it reasonable attorney fees expended in this action up to the time it became moot, in an amount to be determined upon submission of appropriate fee affidavits and, if necessary, a fee hearing.

DATED: July 14, 2005.               Respectfully submitted,

                                    SHUGHART THOMSON & KILROY, P.C.


                                    s/ Bennett L. Cohen
                                    D.J. Poyfair
                                    Bennett L. Cohen
                                    1050 Seventeenth Street, Suite 2300
                                    Denver, CO 80265
                                    Telephone: (303) 572-9300
                                    Facsimile: (303) 572-7883
                                    **DC Box 26**

                                    Attorneys for Family Shield Technologies, LLC

---

reply because, while Justice Scalia's proposed criterion for fee shifting in moot cases is not yet law, Family Shield can rely instead on its legislative victory render it the prevailing party.

1738870.1                           7

## CERTIFICATE OF SERVICE

I certify that, on this 14th day of July, 2005, a true and correct copy of the foregoing pleading was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification to all parties in the case who are able to receive such electronic notification. Additionally, the pleading is also being served by U.S. mail, postage prepaid, to the following:

Mark Wielga, Esq.
Erika Zimmer Enger, Esq.
Nathan M. Longenecker, Esq.
Temkin Wielga & Hardt LLP
1900 Wazee Street, Suite 303
Denver, CO 80202
COUNSEL FOR DIRECTORS

Ernest J. Getto, Esq.
Daniel Scott Schecter, Esq.
Catherine S. Bridge, Esq.
Latham & Watkins
633 W. Fifth Street, Suite 4000
Los Angeles, CA 90071
COUNSEL FOR DIRECTORS

Jonathan Zavin, Esq.
Jacques M. Rimokh, Esq.
Christian D. Carbone, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
COUNSEL FOR STUDIOS

Thomas B. Kelley, Esq.
Christopher Beall, Esq.
Natalie Hanlon-Leh, Esq.
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
COUNSEL FOR STUDIOS

Mark Wright, Esq.
The Wright Law Group
7201 W. Oakland, Suite 2
Chandler, AZ 85226
COUNSEL FOR CLEANCUT CINEMAS

Kenneth R. Bennington, Esq.
Kathleen E. Craigmile, Esq.
Cameron T. Chandler, Esq.
Bennington Johnson Bierman & Craigmile, LLC
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
COUNSEL FOR FAMILY FLIX USA, LLC

Scott J. Mikulecky, Esq.
Sherman & Howard L.L.C.
90 S. Cascade Avenue, Suite 1500
Colorado Springs, CO 80903
COUNSEL FOR PLAINTIFFS

David N. Schachter, Esq.
Sherman & Howard L.L.C.
633 17th Street, Suite 3000
Denver, CO 80202
COUNSEL FOR PLAINTIFFS

Jeffrey N. Aldous, Esq.
Leefe, Gibbs, Sullivan, Dupre & Aldous
4262 Imperial Way
Provo, UT 84604
COUNSEL FOR CLEANFLICKS, LLC

1738870.1                                8

| | |
|---|---|
| Robert S. Giolito, General Counsel<br>Directors Guild of America<br>7920 Sunset Boulevard<br>Los Angeles, CA  90046<br>COUNSEL FOR DGA | James W. Hubbell, Esq.<br>1441 18th Street<br>Denver, CO 80202<br>COUNSEL FOR INTEL CORPORATION |
| Carolyn J. Fairless, Esq.<br>Wheeler, Trigg & Kennedy, P.C.<br>D.C. Box 19<br>1801 California Street, Suite 3600<br>Denver, CO  80203<br>COUNSEL FOR ELECTRONIC<br>FRONTIER FOUNDATION | James M. Burger, Esq.<br>Jonathan D. Hart, Esq.<br>Kathleen E. Fuller, Esq.<br>Dow, Lohnes & Albertsons, PLLC<br>1200 New Hampshire Ave., N.W., Suite 800<br>Washington, D.C. 20036<br><br>Andrew P. Bridges<br>Terri Y. Chen<br>Wilson Sonsini Goodrich & Rosati<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>ATTORNEYS  FOR CLEARPLAY, INC.<br><br>Thomas P. Howard, Esq.<br>Thomas P. Howard, LLC<br>245 Century Circle, Suite 206<br>Louisville, CO 80027<br>ATTORNEYS FOR TRILOGY STUDIOS, INC. |

SHUGHART THOMSON & KILROY, P.C.


s/ Bennett L. Cohen_____
D.J. Poyfair
Bennett L. Cohen
1050 Seventeenth Street, Suite 2300
Denver, CO 80265
Telephone:  (303) 572-9300
Facsimile:  (303) 572-7883
**DC Box 26**

Attorneys for Family Shield Technologies, LLC

1738870.1                                             2