# EXHIBIT D

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2

 3   ROBERT HUNTSMAN, et al.,              )
                                           )
 4                    Plaintiffs,          )
                                           )
 5            vs.                          )    02 CV 1662
                                           )
 6   STEVEN SODERBERGH, et al.,            )
                                           )
 7                    Defendants.          )

 8   _____

 9                    STATUS CONFERENCE
                  TRANSCRIPT OF PROCEEDINGS
10   _____

11           Proceedings held before the HONORABLE RICHARD P.

12   MATSCH, U. S. District Judge for the District of Colorado,

13   beginning at 2:00 p.m. on the 21st day of July, 2005 in

14   Courtroom A, United States Courthouse, Denver, Colorado.

15                        APPEARANCES
16

17   For Robert Huntsman      David N. Schachter, Esq.
     and Clean Flicks of      Sherman & Howard
18   Colorado:                633 - 17th Street, #3000
                              Denver, Colorado  80202
19
     For Clean Flicks:        Jeffrey Aldous, Esq.
20                            Leefe Gibbs Sullivan Dupre
                              & Aldous
21                            4262 Imperial Way
                              Provo, Utah  84604
22

23        Proceedings recorded by electronic sound recording;
             transcript produced by transcription service.
24

25
```

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

2

APPEARANCES:   (Continued)

For Individual Directors          Mark A. Wielga, Esq.
and the Directors' Guild:         Temkin, Wielga & Hardt, LLP
                                  1900 Wazee Street, #303
                                  Denver, Colorado  80202

For Family Flix:                  Cameron T. Chandler, Esq.
                                  Bennington, Johnson et al.
                                  370 - 17th Street, #3500
                                  Denver, Colorado  80202

For Individual Directors          Ernest J. Getto, Esq.
and the Directors' Guild:         Latham & Watkins, LLP
                                  505 Montgomery Street, #1900
                                  San Francisco, CA  94111

For the Studio Defendants:        Natalie Marie Hanlon-Leh, Esq.
                                  Faegre & Benson
                                  1700 Lincoln Street, #3200
                                  Denver, Colorado  80203

For the Studio Defendants:        Jonathan Zavin, Esq.
                                  Loeb & Loeb, LLP
                                  345 Park Avenue
                                  New York, New York  10154

For Family Shield:                Ben Cohen, Esq.
                                  Shughart, Thomson & Kilroy, PC
                                  1050 - 17th Street, #2300
                                  Denver, Colorado  80265

For ClearPlay:                    Jennifer A. Golinveaux, Esq.
                                  Winston & Strawn, LLP
                                  101 California Street
                                  San Francisco, CA  94111

For Trilogy Studios:              Thomas P. Howard
                                  245 Century Circle, #206
                                  Louisville, Colorado  80027

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

3

1               P R O C E E D I N G S

2          (At 2:00 p.m. on July 21, 2005, in the United States

3      District Court at Denver, Colorado, before the HONORABLE

4      RICHARD P. MATSCH, U. S. District Judge, with counsel for the

5      parties present, the following proceedings were had:)

6          THE COURT:  Please be seated.

7               We're convened in what is now Civil Action 02 CV

8      1662, in which Robert Huntsman and Clean Flicks of Colorado,

9      LLC are the original plaintiffs, and then I'm not going to

10     name all the parties here in announcing this.  But, we're

11     here for the status conference, which was ordered by the

12     order of June 29th after the receipt of the papers filed in

13     response to the order to show cause regarding the effects of

14     that legislation that has been called the Family

15     Entertainment and Copyright Act of 2005.  And, there have

16     been some additional papers filed after the entry of that

17     order for the status conference.

18               So, it's been some time since we were together in

19     this matter, so I'll ask counsel to introduce themselves

20     again and their respective party--clients.

21               Mr. Schachter?  Well, excuse me, go ahead.  We'll

22     start with the--you know, this is this awkward situation

23     where the plaintiffs are now primarily defendants, and it's

24     kind of hard to identify counterclaim defendants, intervenor,

25     and so forth.  So, go ahead.

4

1        MR. SCHACHTER:  Good afternoon, Your Honor.  David
2   Schachter of the law firm of Sherman and Howard representing
3   Clean Flicks of Colorado, LLC, Robert Huntsman, and also the
4   counterclaim defendant Play it Clean Video.

5        THE COURT:  Okay.

6        MR. ALDOUS:  Your Honor, Jeff Aldous on behalf of Clean
7   Flicks, LLC.

8        THE COURT:  All right.

9        MR. HOWARD:  Your Honor, Thomas P. Howard on behalf of
10  Trilogy Studios.

11       THE COURT:  All right.

12       MR. COHEN:  Ben Cohen, Your Honor.  D.J. Poyfair is not
13  here.  We're here on behalf of Family Shield Technologies.

14       THE COURT:  All right.

15       MR. CHANDLER:  Your Honor, Cam Chandler on behalf of
16  counter-defendant Family Flix, USA, LLC and counter-defendant
17  ASR Management.

18       THE COURT:  All right.

19       MS. GOLINVEAUX:  Your Honor, Jennifer Golinveaux of the
20  law firm of Winston and Strawn on behalf of defendant
21  counter-claimant ClearPlay, Inc.

22       THE COURT:  ClearPlay--excuse me.  ClearPlay, did you
23  say?

24       MS. GOLINVEAUX:  ClearPlay.

25       THE COURT:  Yes, all right, thank you.

5

1     MR. WIELGA:  Your Honor, Mark Wielga of Temkin Wielga
2  and Hart for the individual directors, and the Directors'
3  Guild.  And, with me from Latham and Watkins is Ernie Getto.
4     THE COURT:  Okay.
5     MR. ZAVIN:  Your Honor, Jonathan Zavin of Loeb and Loeb
6  for the eight studios who are defendants and counter-
7  claimants, and with me is Natalie Hanlon-Leh from Faegre and
8  Benson.
9     THE COURT:  Thank you.  Well, as I understand it from
10  the papers filed, Trilogy Studios has agreed to a dismissal,
11  a stipulation for dismissal.
12     MR. HOWARD:  Yes, that is correct, Your Honor.
13     THE COURT:  And, I believe the stipulation has been
14  signed by the studios and the directors?
15     MR. ZAVIN:  Yes, Your Honor, that's correct.
16     THE COURT:  So, I can sign that and, Mr. Howard, I guess
17  you don't have any burden here anymore.
18     MR. HOWARD:  Thank you very much, Your Honor.
19     THE COURT:  If you'd like to be an interested spectator,
20  you may, but you don't have a role to play, I guess.  You're
21  excused if you want to be, is what I'm saying.
22     MR. HOWARD:  I appreciate that, Your Honor.  Thank you
23  very much.
24     THE COURT:  Now, it's also my understanding from the
25  papers filed that the parties that provided the means by

6

1   which the public can selectively edit the films, there's no

2   ongoing dispute with respect to whether the continuation of

3   the sale of that technology was a violation of the copyrights

4   or the Lanham Act, and so forth.  But, what remains here with

5   respect to Family Shield Technologies and ClearPlay is their

6   contention that Congress--that the legislative history should

7   be interpreted to say that Congress, by the enactment of this

8   legislation, determined the issues and, therefore, these

9   parties should be entitled to attorney's fees in disputing--

10  in that, by virtue of the enactment, the movie studies and

11  directors have engaged in frivolous litigation here.

12          And, the parties have submitted papers on that,

13  including the latest being Family Shield's I guess it's

14  identified as surreply.  And, I don't know, I guess the

15  question there is are you all in on that?  I mean, have we

16  got all of the authorities you choose to cite, and whether

17  that's ripe for adjudication.

18          So, go ahead, Mr. Zavin.

19      MR. ZAVIN:  Your Honor, we believe it is, with one

20  exception.

21      THE COURT:  And, that is what?

22      MR. ZAVIN:  Certainly, the authorities are in with

23  respect to whether or not the Family Shield and ClearPlay are

24  prevailing parties, and whether they're entitled to

25  attorney's fees to prevailing parties, and whether the action

7

1   is moot.

2        If Your Honor were to decide that they were

3   prevailing parties and that the action is not moot, we would

4   want to submit additional papers and brief the issue whether

5   they are still entitled to attorney's fees under the

6   standards under the Copyright Act, which is objected on

7   reasonableness, frivolousness, et cetera.  That, we did not

8   try to brief because we didn't think it was ripe--

9        THE COURT:  Well, come up and explain that a little more

10  to me.  I'm not clear about the distinction you're making.

11       MR. ZAVIN:  Your Honor, in order to get attorney's fees

12  under the Copyright Act, the plaintiffs or defendants,

13  whichever we choose to call them--

14       THE COURT:  Right.

15       MR. ZAVIN:  --would need to show two things.  One,

16  first, they would have to show they were a prevailing party.

17       THE COURT:  Right.

18       MR. ZAVIN:  Which is the first issue.  Even if they were

19  to demonstrate that, which we think under the law they

20  clearly cannot, they would then have to separately

21  demonstrate that the Court should exercise its discretion and

22  award them attorney's fees on the grounds that the studios'

23  position was objectively unreasonable, or frivolous.

24       THE COURT:  Well, all right.

25       MR. ZAVIN:  That's a separate issue, which we did not

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

8

1    brief.

2        THE COURT:  Oh, well, I thought this briefing included

3    that.

4        MR. ZAVIN:  No, Your Honor, it didn't because

5    originally, what happened is Your Honor asked for submissions

6    as to the effect of the Family Movie Act.

7        THE COURT:  Yes, right.

8        MR. ZAVIN:  In the submissions of ClearPlay--

9        THE COURT:  And, you know, the Trilogy answer was what

10   I--the response with respect to Trilogy is what I expected.

11       MR. ZAVIN:  Your Honor, frankly, it's what we expected

12   also.

13       THE COURT:  But, now we have this separate thing, and I

14   thought that the Family Shield's surreply did cover both

15   prevailing party and the unreasonableness of the--

16       MR. ZAVIN:  It did, but we did not respond to that and

17   put in a surreply on the unreasonableness of the fee, or the

18   unreasonableness of the behavior, or objective

19   unreasonableness, because we think that it's dispositive that

20   there's just no prevailing party under, you know, existing

21   Supreme Court law.

22          If Your Honor were to disagree with that, we would

23   want an opportunity to brief--

24       THE COURT:  Further.  Okay.

25       MR. ZAVIN:  Further.

9

1      THE COURT:  Understood.  With respect to Family Shield,

2  though, you're in on that, aren't you?  I mean, I understood

3  the papers filed by Family Shield here to include both

4  aspects of it.

5      MR. COHEN:  Yes, Your Honor.  Clearly, Your Honor does

6  appreciate our argument that in this unique situation, a

7  prevailing party determination can be made based on

8  Congressional action and imprimatur.  So, I won't--that's

9  been adequately briefed.

10      We would respectfully disagree with the studios'

11  position that if the Court determines that the player

12  controlled parties are prevailing parties, then we would need

13  a whole new set of briefing on the issue of fee shifting, and

14  for that simple reason that the summary judgment briefs have

15  already been presented, and Your Honor can just take a look

16  at the summary judgment briefs and determine from them the

17  merits of the parties' respective position.  It does not

18  merit another full second litigation, as the Supreme Court

19  has cautioned against.

20      So, we would urge the Court to make the fee

21  shifting determination on the record that it has before it.

22      THE COURT:  And, ClearPlay takes the same position?

23      MS. GOLINVEAUX:  Your Honor, I think ClearPlay's

24  position is a little different.

25      THE COURT:  Okay.

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.  800-626-6313

10

1       MS. GOLINVEAUX:  ClearPlay disagrees that the case

2   should be considered moot at this point.  We do agree that

3   it's fully briefed in the sense that clearly, ClearPlay is

4   entitled to summary judgment at this point.  But, we think

5   that the Family Movie Act merely clarified law on that point.

6   We ask that the Court enter summary judgment in favor of

7   ClearPlay at this point.

8           The studios have cited no case in which the Court

9   has found mootness based on facts such as these, where--

10      THE COURT:  Well, we haven't got a case such as this

11  where Congress decides, by your view, to decide the case.

12      MS. GOLINVEAUX:  That's true, Your Honor, but mootness

13  is found when the fact, the underlying facts of the case

14  change so much that the very object of the case no longer

15  exists.  Here, Congress has simply passed additional

16  legislation to clarify that there is no liability on

17  ClearPlay's point here.

18      THE COURT:  Well, you say it's to clarify.  The other

19  side says it's to amend the law to permit it.

20      MS. GOLINVEAUX:  That's right, Your Honor.

21      THE COURT:  Those are two different views of what

22  Congress did.  But, what do you want--you want a summary

23  judgment that says this is the law--was the law all along?

24      MS. GOLINVEAUX:  No, Your Honor.  ClearPlay is asking

25  that the Court enter summary judgment both based on the

FORM CSR - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

11

1  arguments set forth in the player controlled parties initial

2  motion, as well as the supplemental justification offered by

3  the Family Movie Act.

4      THE COURT:  All right.  Well, what about attorney's

5  fees?

6      MS. GOLINVEAUX:  Your Honor, we would ask that the Court

7  enter a briefing schedule to fully address the issue of

8  attorney's fees.  We don't feel like that issue is ripe for

9  decision at this point.

10     THE COURT:  Why not?

11     MS. GOLINVEAUX:  Because it has not been fully briefed

12 yet, and ClearPlay--

13     THE COURT:  Well, what other briefing are you talking

14 about?

15     MS. GOLINVEAUX:  Well, Your Honor, ClearPlay has not

16 briefed the issue of attorney's fees yet.

17     THE COURT:  Well--

18     MS. GOLINVEAUX:  And, ClearPlay has not filed a motion

19 for--

20     THE COURT:  Don't you agree with what Family Shield has

21 argued?

22     MS. GOLINVEAUX:  Our position is slightly different from

23 Family Shield, because we don't believe that that doctrine of

24 mootness applies here, Your Honor.

25     THE COURT:  Well, what is it that you wish to brief that

FORM CSR - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

12

1  isn't already in Family Shield's papers?

2      MS. GOLINVEAUX:  The issue of attorney's fees, and

3  ClearPlay's entitlement--

4      THE COURT:  What about attorney's fees that different

5  from what they say, which is that because of the legislative

6  history, it should be determined that the position taken by

7  the studios and the directors is unreasonable?

8      MS. GOLINVEAUX:  Well, that's exactly right, Your Honor.

9  That's exactly what we would ask--

10      THE COURT:  Yes.  So, what more have you got on that?

11  Is some authority out there that says in an analogous case

12  that that's the case?

13      MS. GOLINVEAUX:  Your Honor, I guess what I'm saying is

14  that ClearPlay is asking for a briefing schedule in order to

15  address the issue of entitlement to attorney's fees in this

16  case as--

17      THE COURT:  What I'm trying to get from you is what

18  would you brief that's not already in here in the brief from

19  Family Shield?

20      MS. GOLINVEAUX:  Your Honor, simply that as a prevailing

21  party, ClearPlay would be entitled to its attorney's fees in

22  this case.

23      THE COURT:  All right.

24      MS. GOLINVEAUX:  Thank you, Your Honor.

25      THE COURT:  I'll issue a ruling on the basis of the

13

1  papers filed.  And, if I need more briefing, I'll ask for it,
2  both with respect to whether I think it's necessary, or
3  whether due process entitles parties to some additional
4  input.
5        Now, so, you can expect a ruling here in the near
6  future at least on whether I think this is the equivalent of-
7  -you know, there isn't anything quite like this where
8  Congress decides a case in the middle of its being in the
9  trial court.  There are some where they have decided it
10  afterwards, although it has been my experience in other
11  matters on the criminal side that Congress has seen fit to
12  direct me in connection with litigation that's going on here.
13        However, I've got your papers here, and I think I
14  can rule.
15        Now, we need to talk about the future with respect
16  to the others.  There has been the contention made by I guess
17  what I call Clean Films and Family Flix, that we ought to
18  treat everybody the same here, and, therefore, should expand
19  the scope of the Family Entertainment and Copyright Act of
20  2005 to include the technology whereby the films are actually
21  edited--I mean, the equivalent of being edited before they go
22  to the public.  I'm not going to do that.  I don't think that
23  the statute has affected the dispute with respect to that.
24        Now, we've got briefing in.  The defendants filed a
25  motion for summary judgment, the defendants, counter-

14

1  claimants, the studios.  And, so, we're waiting for a
2  response to that, aren't we?  Tell me if I'm wrong about my
3  understanding of the posture of the case on the issues here
4  that I say are remaining, and that you say are remaining,
5  too.
6      MR. ZAVIN:  We agree with you, Your Honor.  We think
7  that that would take care of the remainder of the case
8  against all of the--
9      THE COURT:  Your--what was it, filed in--
10     MR. ZAVIN:  It was filed, I believe, on June 15th.
11     THE COURT:  15th.  And, that covers all of the remaining
12 parties in the--
13     MR. ZAVIN:  With one minor exception, Your Honor, which
14 we agree Mr. Huntsman got left out--
15     THE COURT:  Oh, yes.
16     MR. ZAVIN:  --by us.  No one had--he had been so
17 inactive, frankly, we forgot about him.  We agree that Mr.
18 Huntsman should be dismissed also based on the Family Movie
19 Act under the same basis as Trilogy agreed to.  So, we would
20 readily agree to that.
21     THE COURT:  And, did Mr. Huntsman file anything in
22 response here?  I forgot.
23     MR. SCHACHTER:  No, Your Honor, he didn't.  Actually, we
24 had wondered the same thing as we read through, it's like
25 well, where is Mr. Huntsman.  Doesn't he belong here, too?

15

1    So, he's answered my question on that.

2         THE COURT:  Who represents Mr. Huntsman?

3         MR. SCHACHTER:  I represent Mr. Huntsman.

4         THE COURT:  Yes, okay.  So--

5         MR. SCHACHTER:  We wondered about it, too.

6         THE COURT:  So, that should just be a dismissal in the

7    same fashion as Trilogy?

8         MR. SCHACHTER:  If that's something you're prepared to

9    do, I'm--

10        MR. ZAVIN:  We are.

11        THE COURT:  So, I guess we ought to do it with a

12   stipulation, in writing, I mean.

13        MR. ZAVIN:  We will prepare a stipulation where both the

14   studios and the directors--

15        MR. SCHACHTER:  That's fine.  We can work this out.

16        THE COURT:  All right.  I say in writing.  Now it has to

17   be done with electronics.  So--

18        MR. ZAVIN:  And, with respect to the what have been

19   called the mechanical editing parties, or the people who cut

20   and paste, their motion has been made.  I believe a response

21   under the rules was due before now, but we had had

22   discussions with some of defendants' counsel.

23        THE COURT:  Yes, it would normally be 20 days, and that

24   was from June 15th.  But, this has been in the shadows, so

25   I'm not saying that you're out of time for responding.

16

1      MR. ZAVIN:  Nor are we, Your Honor.  What we had
2  actually informally agreed to with some of defendants'
3  counsel was that there would be an opposition brief--
4  opposition briefs would be due August 15th, and reply, if
5  any, would be due September 22nd, which I think was agreeable
6  to most defendants' counsel.  But, there seemed to be some
7  question among them, I think raised by Mr. Aldous.
8      THE COURT:  All right.  Well, Mr. Aldous, you can raise
9  it.
10      MR. ALDOUS:  Well--
11      THE COURT:  Come on up, so we--
12      MR. ALDOUS:  I had earlier filed a motion--
13      THE COURT:  Will you come up so we can be sure to get
14  you on the record?
15      MR. ALDOUS:  Your Honor, I had earlier filed a motion to
16  withdraw based upon the amount of fees that I had incurred,
17  and I think it was over a year and a half ago.  I know it
18  hasn't been brought up to the attention--my clients have been
19  pretty much sitting in the background.  They have spent I
20  guess the last little bit over a year looking for another law
21  firm and trying to get some funding to assist them in that
22  aspect.  I know that they have interviewed dozens of firms.
23  In fact, I know I have personally spoken with about four or
24  five different attorneys with different firms to kind of give
25  them a grasp of the case.  They haven't had anybody to take

17

1  the case at this point.

2      THE COURT:  Well, you filed a motion--

3      MR. ALDOUS:  I did file a motion.  They asked me to file

4  a motion for a 90 day extension to respond to the new

5  legislation.  They didn't want me to go ahead and file

6  anything because they were in the process, they've done

7  interviews with several law firms, and if I understand

8  correctly, they're engaged--

9      THE COURT:  When did you file your motion to withdraw?

10     MR. ALDOUS:  A year and a half ago.

11     THE COURT:  And, I didn't do anything about it?

12     MR. ALDOUS:  No.

13     THE COURT:  Okay.  Sorry.

14     MR. ALDOUS:  So, I'm still kind of on the hook.  So,

15 anyway, what my client would like to do is have an extension

16 to file a response to the new legislation, because they feel

17 that the new legislation is--at least their position is very

18 similar to the software control parties.

19     THE COURT:  Well, but it isn't.

20     MR. ALDOUS:  I know.  But, that's their position, and

21 I'm here to expound on that.

22     THE COURT:  Yes.  Well, they're going to waste time and

23 money on that.

24     MR. ALDOUS:  Well, they've asked for that ability to be

25 able to do that when they get their new counsel.

18

1        And, the other thing is, if I understand correctly-

2 -

3     THE COURT:  Well, are they still in business?

4     MR. ALDOUS:  They still are in business.  They have

5 indicated that they want to and that they need to probably

6 take some additional discovery in order to respond to the

7 summary judgment motion.

8     THE COURT:  Well, who are you talking for here?

9     MR. ALDOUS:  I'm talking for Clean Flicks, LLC

10 successor.

11     THE COURT:  Yes.  But, I mean who?  Are you talking

12 about a house counsel or--

13     MR. ALDOUS:  Well, I would say one person from the

14 director, and I think we had talked about doing two people

15 with the DGA and two directors.  And, I believe as far as the

16 discovery has gone so far, we've taken one person from the

17 Directors' Guild, and we've taken Mr. Redford's deposition.

18 So, they wanted to be able to be--the new firm to be actively

19 involved in that.

20     THE COURT:  Well, you know, I appreciate your position

21 here, and your representing a client who's not paying you,

22 and, you know, that's in the best tradition of the

23 profession, and all those good things.  But, I'm not going to

24 grant these requests from them.  Your withdrawal, I'm going

25 to grant.  I'm sorry that it escaped my attention before

19

1  this.  I'm not going to put you in that situation here where

2  you have to work without receiving payment for your services.

3  And, I appreciate your attendance at this.  But, I'm not

4  granting any requests from them through you in this

5  situation.

6      MR. ALDOUS:  Okay.

7      THE COURT:  So, I will provide that they've got 30 days

8  to appear with new counsel, or they're in default.

9      MR. ALDOUS:  Okay.  Thank you, Your Honor.

10     THE COURT:  Now, that doesn't mean, you know, that I

11 grant a motion for summary judgment by default either,

12 because I don't do that.  But, I'm not granting any request

13 for further discovery or for this position that the Act

14 clears them.  So, they will have 30 days to--and, we've got

15 another motion to withdraw here just filed from Mr. Bono.

16 Oh, that was for ClearPlay.  So, ClearPlay is represented.

17     MS. GOLINVEAUX:  Yes, Your Honor.  He had originally

18 filed ClearPlay's answer, I believe, several years ago.

19     THE COURT:  I see.  Okay.  So, ClearPlay is represented.

20 We just should excuse Mr. Bono from any responsibility.

21     MS. GOLINVEAUX:  Yes, Your Honor.

22     THE COURT:  Because they're adequately represented.

23         All right, well, we're back then to the suggestion

24 of August 15th and September 22nd as the dates for responding

25 to the summary judgment motions by the studios and directors.

20

1          Is that agreeable, Mr. Schachter?  Is that

2   agreeable to you?

3       MR. SCHACHTER:  Well, Your Honor, I don't know if Mr.

4   Zavin spoke to my partner, Mr. Mikulecky, about that.  So, I

5   apologize if I'm a little behind the eight ball on those

6   discussions.  I would respectfully request a little bit more

7   than August 15th, given the date of today's hearing.  But, if

8   that's not something that the Court is inclined to do, I can

9   live with those dates.  I'm not in a position to ask for more

10  discovery, or anything like that.  I just wasn't party to any

11  of those discussions, and I don't know if there were some of

12  Clean Flicks--

13      MR. ALDOUS:  The only thing I would add, Your Honor, if

14  my client needs or has 30 days in order to engage new

15  counsel, they're going to need a little bit of time to also

16  prepare and brief for that.

17      THE COURT:  We'll use that same 30 days then.  How about

18  that?  30 days from today is what?

19      MR. ALDOUS:  August 21st.

20      THE COURT:  Well, roughly.  What is it--what?

21      THE CLERK:  August 22nd.

22      THE COURT:  August 22nd.  Is that a business day?

23          All right, how about August 22nd?

24      MR. SCHACHTER:  To file response briefs to the motion?

25      THE COURT:  Yes.

21

1    MR. SCHACHTER:  Yes.

2    THE COURT:  And, you can still do September 22nd on your

3  reply, couldn't you?

4    MR. ZAVIN:  Yes, September--August 22nd and September

5  22nd is fine, Your Honor.

6    THE COURT:  Yes.  Because, you know, we're not doing any

7  additional discovery.  These are motions based on the record

8  as we have it.  So, all right, and then instead of, Mr.

9  Aldous, instead of saying 30 days to get new counsel, it will

10  be 30 days, and if they're going to file any papers in

11  response, it will be by new counsel.

12        You know, one of the interesting things here is

13  that if I were to read the legislative record here in the

14  manner that has been suggested by Family Shield, I could say

15  Congress also decided this case in favor of the studios and

16  the directors because they didn't include that technology in

17  the effect of this statute, because someone represented to

18  them that this other technology is a violation.  I'm not

19  going to go there.  You can take a deeper breath there, Mr.

20  Schachter, because I don't--I'm not going there, and I don't

21  think I'm going there on Family Shield either.  But, I have

22  to be careful in the analysis, and also show some appropriate

23  respect for another branch of government.

24        So, I'll issue a written order with--ruling with

25  respect to this matter of prevailing party, at least, and

22

1  mootness, and it will go on this other schedule.

2          Anything else at this time?

3      MR. ZAVIN:  Not by the studios or the directors, Your

4  Honor.

5      MR. SCHACHTER:  Nothing from us, Your Honor.

6      THE COURT:  Okay.  Thank you very much.  Court's in

7  recess.

8          (2:27 p.m. - Whereupon, the proceedings were concluded.)

9

10

11

12

13

14

15          I certify that the foregoing is a correct

16  transcript from the record of proceedings in the above-

17  entitled matter.

18

19

20

21                        *Mary Chevalier*

22  August 22, 2005         Federal Reporting Service, Inc.

23                          17454 E. Asbury Place

24                          Aurora, Colorado  80013

25                          (303)  751-2777