# EXHIBIT E



```
H.R. REP. 102-836                                                         Page 1
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
(Cite as: H.R. REP. 102-836, 1992 U.S.C.C.A.N. 2553)
```

**\*\*2553** P.L. 102-492, COPYRIGHT: FAIR USE OF UNPUBLISHED WORKS

\*1 FAIR USE OF COPYRIGHTED WORKS

DATES OF CONSIDERATION AND PASSAGE

House: August 11, 1992
Senate: October 7, 1992
Cong. Record Vol. 138 (1992)
House Report (Judiciary Committee) No. 102-836,
Aug. 11, 1992 (To accompany H.R. 4412)

HOUSE REPORT NO. 102-836
August 11, 1992

[To accompany H.R. 4412]

The Committee on the Judiciary, to whom was referred the bill (H.R. 4412) to amend title 17, United States Code, relating to fair use of copyrighted works, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:
Strike out all after the enacting clause and insert in lieu thereof the following:
That section 107 of title 17, United States Code, is amended by adding at the end the following:
"The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors."

EXPLANATION OF AMENDMENT

Inasmuch as H.R. 4412 was ordered reported with a single amendment in the nature of a substitute, the contents of this report constitute an explanation of that amendment.

SUMMARY AND PURPOSE

The purpose of H.R. 4412 is to clarify the intent of Congress that there be no per se rule barring claims of fair use of published works. Instead, consistent with Congress's codification of fair use in the 1976 Copyright Act, the courts are to determine the affirmative defense of fair use of unpublished works on a case-by-case basis, after consideration of all the factors set forth in Section 107, title 17 United States Code, as well as any other factors a court may find relevant. The purpose of this legislation is thus to direct the courts to give proper weight to all factors; it is not the committee's intention to direct the courts how much weight to give to any factor in a particular case.
\*2 Copyright legislation involves a balancing of many interests: the public, authors of unpublished works, and authors seeking to use portions of other authors' unpublished works. The goal of H.R. 4412 is to direct the courts to strike the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 102-836                                                         Page 2
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
**(Cite as: H.R. REP. 102-836,  1992 U.S.C.C.A.N. 2553)**

correct balance on the facts before it, free from any per se rules.

## HEARINGS

Proposals to amend the fair use provisions of the Copyright Act were made in the 101st Congress. [FN1]  A joint hearing on those proposals was held by the House Subcommittee on Courts, Intellectual Property, and Administration of Justice, Committee on the Judiciary and the Senate Subcommittee on Patents, Copyrights and Trademarks, Committee on the Judiciary, on July 11, 1990. Testimony was received from the following witnesses: William F. Patry, Policy Planning Advisor to the Register **2554 of Copyrights; a panel of federal judges consisting of the Honorable James L. Oakes, Chief Judge of the United States Court of Appeals for the Second Circuit, the Honorable Roger J. Miner, Circuit Judge, U.S. Court of Appeals for the Second Circuit, and the Honorable Pierre N. Leval, United States District Judge, U.S. District Court for the Southern District of New York; authors Taylor Branch and J. Anthony Lukas; a panel consisting of Floyd Abrams, Esq., Barbara Ringer (former Register of Copyrights) and Jonathan W. Lubell, Esq.; and, a panel from the computer industry consisting of A.G.W. Biddle (Computer and Communications Industry Association) and James M. Burger (CBEMA and Software Publishers Association).

In the 102d Congress, Mr. Hughes and Mr. Moorhead introduced H.R. 2372. H.R. 2372 consisted of three-titles, title I of which contained a provision on fair use of unpublished works. [FN2]  The Subcommittee on Intellectual Property and Judicial Administration held two days of hearings on title I of H.R. 2372 on May 30 and June 6, 1991. Testimony was received on May 30th from the following witnesses: a panel representing publishing interests (Floyd Abrams, Esq., Authors Guild; Kati Marton, an author; Mark Morrill, Esq., Association of American Publishers; and, Kenneth M. Vittor, Esq., Magazine Publishers of America); and, a panel representing computer companies (James M. Burger, Esq., Apple computer, Inc., and William Neukom Esq., Software Publishers Association). Testimony was received on June 6th from: Scott Turow, Esq., and author; Register of Copyrights Ralph Oman; a panel consisting of Edward J. Black, Esq. (Computer and Communications Industry Association); August W. Steinhilber (Educators' Ad Hoc Committee on Copyright Law); Professor Shira Perlmutter (Catholic University of America, Columbus School of Law); and, Robert C. Waggoner, Video Monitoring Services of America, Inc.).

Title I of H.R. 2372 was deleted when the bill was marked up by the Subcommittee on Intellectual Property and Judicial Administration on October 1, 1991.

## COMMITTEE VOTE

On April 30, 1992, a reporting quorum being present, the Committee ordered  H.R. 4412 reported to the full House by voice vote, as amended.

## LEGISLATIVE HISTORY

H.R. 4412 was introduced on March 5, 1992 by Mr. Hughes, Mr. Moorhead, Mr. Synar, Mr. Coble, Mr. Glickman, and Mr. Sangmeister, and was referred to the Committee on the Judiciary on March 9, 1992. Based on the hearing record developed during the 101st and 102d Congresses, the Subcommittee on Intellectual Property and Judicial Administration marked up H.R. 4412 on March 12, 1992.

On April 30, 1992, the full Committee marked up H.R. 4412, and, a quorum of Members being present, approved the amendment in the nature of a substitute and favorably reported the bill by voice vote.

*3 DISCUSSION

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
H.R. REP. 102-836                                                      Page 3
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
(Cite as: H.R. REP. 102-836,  1992 U.S.C.C.A.N. 2553)
```

## BACKGROUND

Fair use is an affirmative defense, [FN3] and as such is relevant only after a copyright owner has made out a prima facie case of infringement. A prima facie case of infringement consists of ownership of the right asserted and unauthorized appropriation by the defendant of a material amount of expression. The copying of facts or of a de minimis amount of expression will not support a prima facie case of infringement. Fair use thus excuses the copying of a material amount of expression, with the test of materiality involving both quantitative and qualitative inquiries.

**2555 Fair use was developed by the courts and was codified for the first time in Section 107 of the 1976 Copyright Act. As United States District Judge Pierre Leval has written, the purpose of fair use is to "serve the copyright objective of stimulating productive thought and public instruction without excessively diminishing the incentives for creativity." [FN4]  This Committee's 1976 report noted that "[a]lthough the courts have considered and ruled upon the fair use doctrine over and over again, no real definition of the concept has ever emerged. Indeed, since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts." [FN5]

In order to provide some guidance, however, Section 107 contains criteria derived from earlier court decisions. The preamble to Section 107 lists six illustrative [FN6]  types of uses that may be analyzed under the doctrine: criticism, comment, news reporting, teaching, scholarship, and research. These uses are not, however, presumptively fair. [FN7]  Instead, the courts are directed to examine the use according to four statutory factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." While all four factors must be considered in each fair use case, additional factors may also be considered in the court's discretion.

All claims of fair use must be judged on the totality of the facts in the particular case by balancing all the factors. For this reason, *4 fair use litigation will always be piecemeal: no legislative solution can answer in advance the outcome of a given dispute.

## FAIR USE OF UNPUBLISHED WORKS

H.R. 4412 was introduced as a result of concerns [FN8]  by some biographers, historians, and publishers that their ability to use unpublished primary source material such as copyrighted letters and diaries had been limited to two decisions from the United States Court of Appeals for the Second Circuit, Salinger v. Random House, Inc., [FN9]  and New Era Publications, International ApS v. Henry Holt & Company. [FN10]  **2556 In order to understand these complaints, a brief review of the fair use doctrine as applied to such material is required.

Before the 1976 Copyright Act, copyright law in the United States was divided between federal and state protection. Published works were protected by the federal copyright law, while unpublished works were generally protected by state common law. [FN11]  The common law, going back to late eighteenth century English cases, had been strict in prohibiting fair use of unpublished works under the theory that the author should decide when and in what form his or her work should first reach the public. [FN12]

The 1976 Copyright Act extended protection to all copyrightable published and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
H.R. REP. 102-836                                                      Page 4
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
(Cite as: H.R. REP. 102-836,  1992 U.S.C.C.A.N. 2553)
```

unpublished works, preempting equivalent state protection. [FN13]  In codifying fair use in Section 107 of title 17, United States Code, however, the statute did not draw a distinction between published and unpublished works. The report of this Committee accompanying the Act did, though, state an intention not to "change, narrow, or enlarge [the present judicial doctrine of fair use] in any way." [FN14] The only direct discussion of unpublished works occurs in the 1975 Senate report: "The applicability of the fair use doctrine to unpublished works is narrowly limited, since although the work is unavailable, this is the result of a deliberate decision on the part of the copyright owner. Under ordinary circumstances, *5 the copyright owner's 'right of first publication' would outweigh any needs of reproduction for classroom purposes." [FN15]

   In 1985, the Supreme Court addressed the question of fair use of unpublished works in Harper & Row, Publishers, Inc. v. Nation Enterprises. [FN16] The Court reversed the Second Circuit and held that The Nation magazine's publication of excerpts from President Gerald Ford's then unpublished autobiography "A Time to Heal" was not fair use. In reaching this result, the Court relied on the common law rule and the legislative history of Section 107 of the **2557 1976 Copyright Act. The Court rejected defendant's argument that fair use was intended by Congress to apply in pari materia to published and unpublished works, [FN17]  holding that "[t]he fact that a work is unpublished is a critical part of its 'nature.' *** [T]he scope of fair use is narrower with respect to unpublished works." [FN18]  The unpublished nature of a work was stated to be a "'key, though not necessarily determinative factor' tending to negate a defense of fair use." [FN19]  Under "ordinary circumstances," the "author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use." [FN20]

                         SALINGER V. RANDOM HOUSE, INC.

   The Second Circuit's first opinion after Harper & Row involved a suit brought by author J.D. Salinger against Random House over a biography that reproduced passages from unpublished letters Salinger had sent to friends and to his editor. The letters had been donated by the recipients or their heirs to university libraries. The biographer obtained access to the letters through the libraries. Salinger sued after seeing galley proofs of the then unreleased biography.

   U.S. District Judge Pierre Leval refused, on fair use grounds, to issue a preliminary injunction against publication of the biography. The Second Circuit reversed and remanded, ordering that an injunction be issued. The court of appeals differed with Judge Leval on a number of issues. Two passages from the circuit court opinion proved particularly troublesome to some publishers and authors. First, the court of appeals rejected Judge Leval's concern that a biographer wishing to use copyrighted unpublished material was faced with the dilemma of either risking infringement by copying verbatim, or, distorting his or her subject's meaning by putting the passage in the biographer's own words. According to the Salinger court, if a biographer copies more than minimal amounts of expression "he deserves to be enjoined." [FN21]  Second, the court of appeals *6 found ambiguous the Supreme Court's statement in Harper & Row that the scope of fair use is narrower with respect to unpublished works. According to the Second Circuit, the passage could mean either that the circumstances in which fair use can be found are fewer in number, or, that the amount of unpublished material that can be copied is less. The court of appeals opted for the first interpretation, concluding that unpublished works "normally enjoy complete protection against copying any protected expression." [FN22]

   **2558 The combination of the court of appeals' comment that biographers who take too much "deserve to be enjoined" and its statement that unpublished works

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 102-836                                                                    Page 5
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
**(Cite as: H.R. REP. 102-836,  1992 U.S.C.C.A.N. 2553)**

"normally enjoy complete protection" caused great concern in the publishing community. That concern was heightened by the Second Circuit's next fair use decision, New Era Publications International ApS v. Henry Holt & Company.

## NEW ERA PUBLICATIONS INTERNATIONAL APS V. HENRY HOLT & COMPANY

  Judge Leval was also the trial judge in this next Second Circuit dispute over fair use of unpublished works. The plaintiff was the copyright owner by assignment of unpublished letters and diaries of L. Ron Hubbard, founder of the Church of Scientology. Again Judge Leval refused to issue an injunction of fair use grounds.
  The Second Circuit upheld Judge Leval's decision not to issue an injunction, but on the different ground of laches. The majority's remarks on the narrow scope of fair use for unpublished works and on injunctive relief echoed the Salinger opinion and increased publishers' and authors' concerns that substantial risks are involved in any history or biography using appreciable amounts of copyrighted expression. The court of appeals majority engaged in extended dicta disagreeing with much of Judge Leval's discussion of fair use, and indicated that but for the laches problem an injunction should have issued. Chief Judge Oakes concurred in the result, but issued an opinion strongly endorsing Judge Leval's fair use ruling and criticizing elements of the Salinger opinion.
  A petition for rehearing en banc was filed and denied. The denial was accompanied, however, by two opinions, one by Judge Newman (the author of the Salinger opinion) joined by Judges Oakes, Kearse, and Winter, the other by Judge Miner (the author of the New Era panel decision) joined by Judges Meskill, Pierce, and Altimari. These two opinions are noteworthy for both the sharp division that they reveal within the Second Circuit, and for their authors' softening of statements made in the earlier opinions. Judge Miner proposed to change a passage in the New Era panel opinion to state that an injunction would follow a finding of infringement only under "ordinary circumstances." He also noted that no decision of the Second Circuit had barred the copying of small amounts of expression, even when done to "enliven the text." Judge Newman took the opportunity to state that one of the most controversial *7 passages in Salinger should have been phrased to read that under ordinary circumstances the consequence of copying more than a minimal amount of unpublished expression is to be considered an infringer (as opposed to being enjoined, as the original passage read).

## **2559 WRIGHT V. WARNER BOOKS, INC.

  While legislative efforts to clarify that there is no per se rule barring fair use of unpublished works were being debated in the Congress, a third case was wending its way through the Second Circuit, Wright v. Warner Books, Inc. The trial judge this time was then-district (subsequently Circuit) Judge John Walker. The Wright case involved unpublished letters of famous author Richard Wright sent to the biographer. Suit was brought by Wright's widow.
  Judge Walker found, on a motion for summary judgment, that fair use protected the biographer's quotation of excerpts from the letters. [FN23]  The Second Circuit affirmed in an opinion by Judge Meskill. [FN24]  Judge Meskill's opinion carefully analyzed both the purpose of the fair use defense and each of the four statutory factors. Regarding the first factor-the purpose of the use-Judge Meskill agreed with Judge Walker that biographies "fit comfortably" within the statutorily enumerated fair use purposes and that this factor "clearly favors" the biographer. The second factor-the nature of the work, here unpublished material-led to the only disagreement with Judge Walker. Judge Walker had weighed this factor in the biographer's favor. Unpublished works, are, according to the court of appeals, "the favorite sons of factor two." After quoting from the Supreme Court's Harper & Row

             © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
H.R. REP. 102-836                                                    Page 6
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
(Cite as: H.R. REP. 102-836,  1992 U.S.C.C.A.N. 2553)
```

opinion and the Second Circuit's Salinger and New Era opinions, the Wright panel concluded: "Our precedents, then, leave little room for discussion of this factor once it has been determined that the copyrighted work is unpublished." [FN25] The third factor-the amount and substantiality of the material used-and the fourth factor-the market effect of the use-were both weighed in the biographer's favor.

In summary, three of the four factors weighed in the biographer's favor. The only factor weighed against the biographer was the unpublished nature of the work, thereby joining the very issue addressed by H.R. 4412. The court of appeals' discussion on this issue is instructive:

> The district court correctly held that defendants were entitled to summary judgment. Three of the four fair use factors clearly favor the defendants. The one that does not-the nature of the copyrighted work-raises an obstacle to this conclusion, but not an insurmountable one. * * * Neither Salinger, Harper & Row, nor any other case, however erected a per se rule regarding unpublished works. The fair use test remains a totality inquiry, tailored to the **2560 *8 particular facts of each case. Because this is not a mechanical determination, a party need not "shut-out" her opponent on the four factor tally to prevail. [FN26]

The Committee believes that the Wright opinion properly balanced all the fair use factors. The Committee also notes that the Wright opinion did not reach the outer limits of what might be regarded as fair use. The Wright opinion affirmed the trial court's grant of defendant's motion for summary judgment, a procedural posture in which all ambiguities and reasonable inferences were resolved in favor of the non-moving party, in this instance the copyright owner of the unpublished letters. Certainly uses beyond those permitted in Wright may also be fair use, depending upon the facts of a particular case. For example, in some circumstances it would be a fair use to copy an author's unpublished expression where necessary to report fairly and accurately a fact set forth in the author's writings. [FN27] Additionally, as Judge Leval has written: "Often, it is the words used by [a] public figure (or the particular manner of expression) that are the facts calling for comment. [FN28]

## POST-WRIGHT CONCERNS

While the Wright opinion takes major steps in the direction of ending the Second Circuit's flirtation with a per se rule, concern has been expressed that the Wright decision did not disavow certain troublesome language in the Salinger opinion, in particular, Salinger's statement that unpublished works "normally enjoy complete protection against copying any protected expression." [FN29]

The origins of this passage were explored by the Copyright Office in its written statement for the joint 1992 hearings and are worth reviewing since they bear directly on the perceived per se rule in the Second Circuit.

The Salinger passage is the result of the court of appeals' conclusion that the Supreme Court's holding in Harper & Row, Pub., Inc. v. Nation Enterprises that "the scope of fair use is narrower with respect to unpublished works" [FN30] contains an ambiguity. According to the Salinger court, the term "scope" could mean either that "the circumstances in which copying will be found to be fair use will be fewer in number for unpublished works than for published works," or, that "the amount of copyrighted material that may be copied as fair use is a lesser quantity for unpublished works than for published works." [FN31] The Salinger court opted for the first interpretation, holding that "[n]arrower 'scope' seems to refer to the diminished likelihood that copying will be fair use when the copyrighted material is unpublished." [FN32]

The Copyright Office disagreed with this interpretation. Moreover, the Office saw in the disagreement over the proper interpretation of Harper &. Row's passage "the crux of the concern that **2561 *9 the Second Circuit has created a virtual per se

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case No. 1:02-cv-01662-RPM   Document 282-6   filed 09/22/05   USDC Colorado   pg 8 of 13

H.R. REP. 102-836                                                    Page 7
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
**(Cite as: H.R. REP. 102-836,  1992 U.S.C.C.A.N. 2553)**

rule prohibiting fair use of unpublished works." [FN33]

The Committee agrees with the Copyright Office that the Second Circuit in Salinger went astray in its treatment of the unpublished nature of the work as leading to a diminished likelihood that the fair use defense, as a whole, will in every case not be available. Of course, in making any evaluation of a claim of fair use of unpublished material, the Supreme Court's holding that for purposes of the second statutory factor, the unpublished nature of the work is a "'key, though not necessarily determinative' factor tending to negate a defense of fair use," [FN34] remains the law.

## ANALYSIS

H.R. 4412 amends Section 107 of title 17, United States Code, by adding the following new sentence at the end of that section: "The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors." This sentence has a narrow, but important purpose: to reiterate Congress's intention in codifying fair use that in evaluating a claim of fair use, including claims involving unpublished works, the courts are to examine all four statutory factors set forth in Section 107, as well as any other factors deemed relevant in the court's discretion.

This intention is accomplished in two ways. First, the word "itself" is designed to ensure that the courts do not erect a per se rule barring any fair use of unpublished works. Each claim of fair use of an unpublished work should involve a careful consideration of all four statutory factors as well as any other factors the court deems relevant. The decision of the Second Circuit in the Wright opinion is instructive in this regard. At the same time, it is not the Committee's intention to alter the weight currently given by the courts to the unpublished nature of a work under the second fair use factor. The general principles regarding fair use of unpublished works set forth by the Supreme Court in Harper & Row v. Nation Enterprises still apply.

The second way in which the Committee's intention is manifested is through the concluding phrase "all the above factors." As introduced, H.R. 4412 directed the courts to examine "all the factors set forth in paragraphs (1) through (4)" of Section 107. At the Subcommittee's mark-up, this formulation was deleted in favor of the current language. The purpose of the change is straightforward: As the Supreme Court held in Harper & Row v. Nation Enterprises, [FN35] the courts, in their discretion may weigh factors in addition to those set forth in the statute.

The Committee was concerned that as introduced, H.R. 4412 might have been inadvertently construed to discourage courts from looking at additional factors. The phrase "all the above factors" is intended to encompass the terms "including" and "such as" embodied in the preamble to Section 107, terms that are defined in **2562 *10 Section 101 of title 17 as being "illustrative and not limitative." [FN36]  Thus, for unpublished works as for all other copyrighted works, the courts must consider all four statutory factors, but they may, at their discretion, consider any other factors they deem relevant.

## COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 2(l)(3)(A) of rule XI of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of the report.

## STATEMENT OF THE COMMITTEE ON GOVERNMENT OPERATIONS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
H.R. REP. 102-836                                                    Page 8
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
(Cite as: H.R. REP. 102-836, 1992 U.S.C.C.A.N. 2553)
```

   No findings or recommendations of the Committee on Government Operations were received as referred to in clause 2(l)(3)(D) of rule XI of the Rules of the House of Representatives.

### NEW BUDGET AUTHORITY AND TAX EXPENDITURES

   Clause 2(l)(3)(B) of rule XI of the Rules of the House of Representatives is inapplicable because the proposed legislation does not provide new budgetary authority or increased tax expenditures.

### INFLATIONARY IMPACT STATEMENT

   Pursuant to clause 2(l)(4) of rule XI of the Rules of the House of Representatives, the Committee estimates that the bill will have no significant inflationary impact on prices or costs in the national economy.

### CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

   In compliance with clause 2(l)(C)(3) of rule XI of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill H.R. 4412, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974:

   U.S. Congress,

   Congressional Budget Office,

   Washington, DC, May 11, 1992.

Hon. Jack Brooks,
Chairman, Committee on the Judiciary,
House of Representatives, Washington, DC.
   Dear Mr. Chairman: The Congressional Budget Office has reviewed H.R. 4412, a bill to amend <u>section 107 of title 17, United States Code</u>, relating to fair use of copyrighted works, as ordered reported by the House Committee on the Judiciary on April 30, 1992.
   CBO estimates that enactment of H.R. 4412 would result in no significant additional costs to the federal government, based on information *11 **2563 provided by the Copyright Office. The bill would clarify the criteria for determining whether the use of unpublished materials is an infringement of copyright.
   Enactment of H.R. 4412 would not affect direct spending or receipts. Therefore, pay-as-you-go procedures would not apply to the bill. No costs would be incurred by state or local governments as a result of enactment of this bill.
   If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is John Webb.

Sincerely,
   Robert D. Reischauer,

   Director.

### CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 102-836                                                      Page 9
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
**(Cite as: H.R. REP. 102-836, 1992 U.S.C.C.A.N. 2553)**

   In compliance with clause 3 of rule XIII of the Rules of the House of
Representatives, changes in existing law made by the bill, as reported, are shown
as follows (existing law proposed to be omitted is enclosed in black brackets, new
matter is printed in italic, existing law in which no change is proposed is shown
in roman):

                  SECTION 107 OF TITLE 17, UNITED STATES CODE

S 107. Limitations on exclusive rights: Fair use

   Notwithstanding the provisions of sections 106 and 106A, the fair use of a
copyrighted work, including such use by reproduction in copies or phonorecords or
by any other means specified by that section, for purposes such as criticism,
comment, news reporting, teaching (including multiple copies for classroom use),
scholarship, or research, is not an infringement of copyright. In determining
whether the use made of a work in any particular case is a fair use the factors to
be considered shall include-
     (1) the purpose and character of the use, including whether such use is of a
commercial nature or is for nonprofit educational purposes;
     (2) the nature of the copyrighted work;
     (3) the amount and substantiality of the portion used in relation to the
copyrighted work as a whole; and
     (4) the effect of the use upon the potential market for or value of the
copyrighted work.
     The fact that a work is unpublished shall not itself bar a finding of fair use
if such finding is made upon consideration of all the above factors.

   FN1 H.R. 4263 (Kastenmeier), S. 2370 (Simon).

   FN2 The remaining two titles, dealing with copyright automatic renewal and the
National Film Preservation Board, were subsequently passed on June 4, 1992 as part
of S. 756.

   FN3 Harper & Row, Pub., Inc. v. Nation Ent., 471 U.S. 539, 561 (1985). In College
Entrance Examination Board v. Cuomo, 90-CV-437 (N.D.N.Y. filed March 23, 1992),
slip opinion at p. 11 footnote 7, the district court erroneously held that where
the copyright owner seeks a preliminary injunction, the copyright owner bears the
burden of disproving the defense. When the copyright owner seeks summary judgment,
the burden of proving the defense, according to the court, is with the defendant.
The College Entrance Examination Board opinion is contrary to the statute and the
Supreme Court's Harper & Row opinion: the burden of proving fair use is **always** on
the **party asserting** the **defense**, regardless of the type of **relief** sought by the
**copyright owner**.

   FN4 Leval, "Toward a Fair Use Standard," 103 Harv. L. Rev. 1103, 1110  (1990).

   FN5 H. Rept. No. 94-1476, 94th Cong., 2d Sess. 65 (1976).

   FN6 Section 107 uses the terms "including" and "such as." Section 101 of the
Copyright Act defines these terms as being "illustrative and not limitative."
Accordingly, types of uses beyond the six enumerated in the preamble to Section 107
may also be considered. Parody is a common example of such a use. See Fisher v.
Dees, 794 F.2d 432, 437-438 (9th Cir. 1986).


                  © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 102-836                                                           Page 10
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
**(Cite as: H.R. REP. 102-836,   1992 U.S.C.C.A.N. 2553)**

FN7 Harper & Row, Pub., Inc. v. Nation Ent., 471 U.S. 539, 561 (1985):  "The drafters resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as an affirmative defense requiring a case-by-case analysis."

FN8 See, e.g., written statement of author J. Anthony Lukas, "Fair Use and Unpublished Works: Joint Hearing Before the Subcomm. on Patents, Copyrights and Trademarks of the Senate Comm. on Patents, Copyrights and Trademarks of the Senate Comm. on the Judiciary and the Subcomm. on Courts, Intellectual Property, and the Administration of Justice," 101st Cong., 2d Sess. 176 (1990) (if the Salinger and New Era rulings are "permitted to stand as the guiding precedent in this area, [we] will increasingly find fewer works of compelling history and biography available on *** bookshelves and eventually in *** libraries"); statement of author Taylor Branch, id. at 160 ("The quotation, in modest and appropriate amounts, of source materials is crucial to providing intimacy, immediacy, ambience, and re-creation of motives and values that history requires and readers need").

FN9 650 F. Supp. 413 (S.D.N.Y. 1986), rev'd, 811 F.2d 90 (2d Cir.), cert. denied, 484 U.S. 890 (1987).

FN10 684 F. Supp. 808 (S.D.N.Y. 1988); 695 F. Supp. 1493 (S.D.N.Y. 1988), aff'd on other grounds, 873 F.2d 576 (2d Cir.), petition for rehearing en banc denied, 884 F.2d 659 (2d Cir. 1989), cert. denied, 110 S.Ct. 1168 (1990).

FN11 An exception was made in the federal statute for works such as motion pictures and speeches that were not intended for sale in copies. See 17 U.S.C. S 12 (1909).

FN12 See written testimony of the Register of Copyrights, "Fair Use of Unpublished Works: Hearing on Title I of H.R. 2372 Before the Subcomm. on Intellectual Property and Judicial Administration of the House Comm. on the Judiciary," 102d Cong., 1st Sess. (June 6, 1991); "Fair Use and Unpublished Works: Joint Hearing on S. 2370 and H.R. 4263 Before the Subcomm. on patents, Copyrights and Trademarks of the Senate Comm. on the Judiciary and the Subcomm. on Courts, Intellectual Property, and the Administration of Justice of the House Comm. on the Judiciary," 101st Cong., 2d Sess. 28-38 (1990).

FN13 17 U.S.C. S 301(a) (1978).

FN14 H. Rept. No. 94-1476, 94th Cong., 2d Sess. 66 (1976).

FN15 S. Rept. No. 94-473, 94th Cong., 1st Sess. 64 (1975). In Harper & Row, Pub., Inc. v. Nation Ent., 471 U.S. 539, 553-554 (1985), the Supreme Court interpreted this Committee's 1976 report as incorporating by reference the quoted language from the 1975 Senate report language because the language had been contained in a 1966 House Judiciary Committee report which the 1976 report referred to favorably. Harper & Row also rejected an argument that the passage should be limited to classroom reproduction of unpublished works. 471 U.S. at 554.

FN16 471 U.S. 539 (1985).

FN17 471 U.S. at 552.

FN18 471 U.S. at 564.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
H.R. REP. 102-836                                                    Page 11
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
```
**(Cite as: H.R. REP. 102-836, 1992 U.S.C.C.A.N. 2553)**

   FN19 471 U.S. at 554.

   FN20 471 U.S. at 555.

   FN21 811 F.2d at 96.

   FN22 811 F.2d at 97. In a concluding remark that is frequently overlooked, the court of appeals added: "We seriously doubt whether a critic reviewing a published collection of the letters could justify as fair use the extensive amount of expressive material [the biographer] has copied." 811 F.2d at 100. Thus, despite the emphasis on the unpublished nature of the Salinger letters, it is obvious that the extent of the copying-the third fair use factor-also played a critical role in the court of appeals' decision.

   FN23 748 F. Supp. 105 (S.D.N.Y. 1990).

   FN24 953 F.2d 731 (2d Cir. 1991). It is perhaps significant that Judge Meskill had joined Judge Miner's opinion in New Era concurring in the Second Circuit's refusal to hear that case en banc, and that Judge Meskill was the dissenter from the panel decision in Harper & Row v. Nation Enterprises which had found fair use. Judge Meskill is also a former member of this Committee.

   FN25 953 F.2d at 737.

   FN26 953 F.2d at 740.

   FN27 See New Era Publications International, ApS v. Henry Holt & Company, 884 F.2d 565, 660 (2d Cir. 1989) (Newman, J., with whom Oakes, C.J., Kearse and Winter, JJ., joined, dissenting from denial or rehearing en banc), cert. denied, 110 S.Ct. 1168 (1990).

   FN28 Id., New Era, 695 F. Supp. 1493, 1502 (S.D.N.Y 1988).

   FN29 811 F.2d at 97.

   FN30 471 U.S. at 564.

   FN31 811 F.2d at 97.

   FN32 Id.

   FN33 Joint Hearings at 51-52.

   FN34 471 U.S. at 555.

   FN35 471 U.S. 539, 562-563 (1985) (considering the defendant's bad faith in using a purloined manuscript).

   FN36 See note 6, supra.

```
 H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992
U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
```

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 102-836 Page 12
H.R. REP. 102-836, H.R. Rep. No. 836, 102ND Cong., 2ND Sess. 1992, 1992 U.S.C.C.A.N. 2553, 1992 WL 199748 (Leg.Hist.)
**(Cite as: H.R. REP. 102-836, 1992 U.S.C.C.A.N. 2553)**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.