IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 02-cv-01662-RPM

CLEAN FLICKS OF COLORADO, LLC,

    Plaintiff,

and

CLEANFLICKS, LLC;
ASR MANAGEMENT CORPORATION d/b/a CLEANFILMS f/k/a MYCLEANFLICKS;
FAMILY FLIX, USA, LLC; and
PLAY IT CLEAN VIDEO, LLC,

    Counterclaim Defendants,

v.

STEVEN SODERBERGH;
ROBERT ALTMAN;
MICHAEL APTED;
TAYLOR HACKFORD;
CURTIS HANSON;
NORMAN JEWISON;
JOHN LANDIS;
MICHAEL MANN;
PHILLIP NOYCE;
BRAD SILBERLING;
BETTY THOMAS;
IRWIN WINKLER;
MARTIN SCORSESE;
STEVEN SPIELBERG;
ROBERT REDFORD;
SYDNEY POLLACK;
METRO-GOLDWYN-MAYER STUDIOS, INC.;
TIME WARNER ENTERTAINMENT CO., LP;
SONY PICTURES ENTERTAINMENT;
DISNEY ENTERPRISES, INC.;
DREAMWORKS LLC;
UNIVERSAL CITY STUDIOS, INC.;

TWENTIETH CENTURY FOX FILM CORP.; and
PARAMOUNT PICTURES CORPORATION,

        Defendants-Counterclaimants,

and

THE DIRECTORS GUILD OF AMERICA,

        Defendant-in-Intervention and
        Counterclaimant-in-Intervention.

## MEMORANDUM OPINION AND ORDER

After years of pleadings with multiple claims, counterclaims and parties, many of them now dismissed by stipulation, the Motion Picture Studios[1] ("Studios") have moved for a partial summary judgment on their counterclaims of copyright infringement against the parties characterized as "Mechanical Editing Parties." An injunction is the relief requested against CleanFlicks, LLC, ("CleanFlicks"), Family Flix, U.S.A., L.L.C. ("Family Flix"), as creators and distributors of infringing works and against ASR Management Corporation, d/b/a CleanFilms, f/k/a MyCleanFlicks ("CleanFilms") and Play It Clean Video, LLC ("Play It Clean"), as distributors of infringing works. While the counterclaim defendants have argued that there are

---

[1]The Co-Defendant Motion Picture Studios are Metro-Goldwyn-Mayer Studios Inc., Warner Bros. Entertainment, Inc. (as successor-in-interest to the copyright interests of named counterclaimant Time Warner Entertainment Company, L.P.), Sony Pictures Entertainment, Inc., Disney Enterprises, Inc., DreamWorks L.L.C., Universal City Studios LLLP, Twentieth Century Fox Film Corporation, and Paramount Pictures Corporation (collectively, together with their subsidiaries and affiliates).

factual disputes to be resolved by a trial, the Court has determined that those disputes are not material to the legal issues raised under Fed. R. Civ. P. 56 and that the Studios are entitled to the injunctive relief requested. Subject matter jurisdiction is pleaded and found under 28 U.S.C. §§ 1338 & 1367(a).

The applicable law is the Copyright Act, 17 U.S.C. §§ 101-122. The Studios, in the aggregate, have valid copyrights for the motion pictures ("movies") identified by name in the filed papers and, therefore, have the exclusive rights granted by § 106 of the Act. They sell and otherwise distribute their movies to the consuming public in various ways, including on DVDs and VHS videocassettes for purchase and rental. They also sell and otherwise distribute edited versions of their movies for use by airlines, network television and syndicated television broadcasters. The Studios' edits are made to conform to such criteria as ratings, content standards and practices, run time, formatting and industry standards. The Studios do not now sell or rent copies of edited versions of their movies on home video directly to consumers. That is the market reached by the counterclaim defendants' businesses.

CleanFlicks is a limited liability company in Utah, owned by Ray and Sharon Lines. It has created and publicly distributed copies of the Studios' movies that it altered by deleting "sex, nudity, profanity and gory violence," using its own guidelines. CleanFlicks began editing movies on VHS videocassettes in June, 2000, added DVDs at some time and now does only DVDs. The deletions are from both audio and visual content of the movies. The editing techniques used include redaction of audio content, replacing the redaction with ambient noise, "blending" of audio and visual content to provide transition of edited scenes, cropping, fogging or the use of a

black bar to obscure visual content.

CleanFlicks first obtains an original copy of the movie from its customer or by its own purchase from an authorized retailer. It then makes a digital copy of the entire movie onto the hard drive of a computer, overcoming such technology as a digital content scrambling protection system in the acquired DVD, that is designed to prevent copying. After using software to make the edits, the company downloads from the computer an edited master copy which is then used to create a new recordable DVD-R to be sold to the public, directly or indirectly through a retailer. Thus, the content of the authorized DVD has been changed and the encryption removed. The DVD-R bears the CleanFlicks trademark. CleanFlicks makes direct sales and rentals to consumers online through its web-site requiring the purchaser to buy both the authorized and edited copies. CleanFlicks purchases an authorized copy of each edited copy it rents. CleanFlicks stops selling to any retailer that makes unauthorized copies of an edited movie.

Family Flix is an Arizona limited liability company owned by Richard and Sandra Teraci. It also copies authorized versions of movies into a computer and edits them to delete "profanity, nudity, strong graphic violence and sexual content or innuendos." Using methods comparable to CleanFlicks, Family Flix sells or rents its DVD-Rs directly to subscribers and to retailers. The original DVD is disabled and generally mounted inside the case with the DVD-R. The Family Flix logo with a disclaimer sticker is put on the case. There are no technical obstructions to copying the DVD-Rs.

CleanFilms, a Utah corporation, and Play It Clean Video, LLC, a Utah limited liability company, both rent and sell edited versions of the movies, obtained from Family Flix, CleanFlicks

and others not parties in this case. CleanFilms maintains an inventory of the unedited versions of the copies it rents or sells to its members in a one-to-one ratio. Play It Clean does not keep an inventory of unedited copies; it relies on its suppliers' representations that they purchase such a copy for each copy sold.

Each of the counterclaim defendants is a commercial entity, obtaining revenue from the sale and rental of the edited movies by their pricing and subscription practices.

The Studios claim that CleanFlicks and Family Flix are infringing their exclusive right to reproduce the copyrighted works under § 106(1); that CleanFlicks and Family Flix are violating the Studios' right to create derivative works under § 106(2); and that all four of the counterclaim defendants are infringing the exclusive right of distribution of copies under § 106(3).

Section 106(1) provides that the owner of a copyright has the exclusive right to "reproduce the copyrighted work in copies or phonorecords." Section 101 defines "copies" as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term 'copies' includes the material object, other than a phonorecord, in which the work is first fixed." The reproduction complained of is the making by CleanFlicks and Family Flix of voluminous fixed copies of the edited master versions of the Studios' movies, i.e., copies of copies, for which their "one-to-one ratio" of edited to original version argument does not preclude a finding of infringement.

Section 106(3) gives the owner of a copyright the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by

rental, lease, or lending." Here, it is undisputed that all four of the counterclaim defendants distributed, by sale and rental, copies (albeit edited) of the Studios' copyrighted works and are therefore liable for infringement in the absence of any applicable defense.

All of the counterclaim defendants assert that they are making "fair use" of the copyrighted works, invoking the limitations on the exclusive rights granted by § 106, as provided in § 107 of the Act. The pertinent language of that section reads as follows:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of a copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include - -
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

Fair use is an affirmative defense on which the counterclaim defendants have the burden of proof. They argue that they have made a sufficient showing of the applicability of the fair use doctrine to warrant a trial.

The Supreme Court in *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) has instructed that the fair use doctrine must be applied using a case-by-case analysis, considering all four of the statutory factors, no one of which should be considered controlling.

Under the purpose and character of use factor**,** the counterclaim defendants concede that

6

their use of the copyrighted works is for commercial gain, but argue, correctly, that under *Campbell*, that fact is not determinative. They seek to establish a public policy test that they are criticizing the objectionable content commonly found in current movies and that they are providing more socially acceptable alternatives to enable families to view the films together, without exposing children to the presumed harmful effects emanating from the objectionable content.

They seek some comfort in language appearing in the opinion deciding *Chicago Bd. of Education v. Substance, Inc.,* 354 F.3d 624 (7th Cir. 2003), that the privilege protects public criticism and may justify substantial copying of that which is being criticized. The holding in that case was an affirmance of the denial of the fair use defense under summary judgment standards. Ironically, Judge Posner wrote that a teacher does not have the right to publish the criticized tests indiscriminately "any more than a person who dislikes Michelangelo's statue of David has a right to take a sledgehammer to it." *Id.* at 630. Or, as may be more aptly said in this case, to put a fig leaf on it to make it more acceptable for viewing by parents with young children.

The accused parties make much of their public policy argument and have submitted many communications from viewers expressing their appreciation for the opportunity to view movies in the setting of the family home without concern for any harmful effects on their children. This argument is inconsequential to copyright law and is addressed in the wrong forum. This Court is not free to determine the social value of copyrighted works. What is protected are the creator's rights to protect its creation in the form in which it was created.

During the pendency of this case Congress enacted the Family Movie Act of 2005, Pub. L. No. 109-9, 119 Stat. 218, 223-224, amending § 110 to provide an exemption for the editing of motion pictures by a member of a private household if no fixed copy of the altered version of the motion picture is created.  That statute eliminated from this case those parties selling technology enabling such private editing.  The legislative history shows that the amendment was not intended to exempt actions resulting in fixed copies of altered works which the House Committee believed illegal.[2]  Thus, the appropriate branch of government had the opportunity to make the policy choice now urged and rejected it.

The Studios contend that the counterclaim defendants are violating the right to create derivative works, being the edited versions of their films.  A "derivative work" is defined in § 101 as

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

This raises the question of whether these DVD-Rs are "transformative."  That same question arises under the fair use defense.  The parties take inconsistent positions on this question.  The counterclaim defendants argue that they are making a transformative use of the copyrighted works for purposes of the first factor under § 107(1) - - that the purpose and character of their use are for criticism of the objectionable content of the movies, and then deny that their edited

---

[2]H.R. Rep. No. 109-33(I) at 6-7 (2005), *reprinted in* 2005 U.S.C.C.A.N. 220, 225.

versions are derivative works because they are not recasting or revising the copyrighted material in a manner that can be characterized as a work of authorship within the statutory definition. On the other hand, the Studios say that the edited versions meet the definition of derivative works but deny that the character of the use is transformative within the scope of the fair use defense.

The transformative nature of the use of copyrighted material requires such a contribution of originality as may be of such public benefit as would serve the underlying purpose of providing copyright protection, as identified in Article 1, § 8 of the Constitution: ". . . to Promote the Progress of Science and useful Arts."

In *Campbell*, the Supreme Court said that a use is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message." *Campbell*, 510 U.S. at 579. The counterclaim defendants add nothing new to these movies. They delete scenes and dialogue from them.

Since oral argument in this case the Second Circuit Court of Appeals decided *Bill Graham Archives v. Dorling Kindersley Ltd.*, 498 F.3d 605 (2d Cir. 2006). It held that the publisher of a "coffee table book," telling the story of the Grateful Dead, made fair use of that music group's artistic images on its event posters and tickets. In so doing, the opinion addressed all of the statutory factors and emphasized that these images were not exploitative and their appearance was only incidental to the commercial value of the historical/biographical book. Therefore, the use of the copyrighted images was "transformatively different from the images' original expressive purpose and [the publisher] does not seek to exploit the images' expressive value for commercial gain." *Id.* at 612.

That is in sharp contrast to the counterclaim defendants' use of the copyrighted works in this case. It is undisputed that the edits are a small percentage of most of the films copied and the use is clearly for commercial gain. There is nothing transformative about the edited copies. Therefore, the first statutory factor in the fair use defense does not support the infringers.

The non-transformative nature of the edited copies coupled with the creative expressions of the movies weigh heavily in favor of the Studios under the second factor, the nature of the copyrighted work.

The third factor requires an examination of the quantitative and qualitative nature of the copyrighted material taken. *Campbell, supra* at 586-587; *Bill Graham Archives, supra* at 613. This factor also weighs against fair use as the amount used is substantial for the movies are copied in almost their entirety for non-transformative use.

The primary argument on the fair use defense is the fourth statutory factor. The counterclaim defendants contend that there is no adverse effect from their use of the movies on the value of the copyrighted work to the Studios. They suggest that the Studios benefit because they are selling more copies of their movies as a result of the editing parties' practice of maintaining a one-to-one ratio of the original and edited versions. It is assumed that the consumers of the edited versions would not have themselves purchased the authorized versions because of the objectionable content and the Studios do not compete in this alternative market.

The argument has superficial appeal but it ignores the intrinsic value of the right to control the content of the copyrighted work which is the essence of the law of copyright. Whether these films should be edited in a manner that would make them acceptable to more of the public playing them on DVD in a home environment is more than merely a matter of marketing; it is a question of what audience the copyright owner wants to reach.

Section 107 is a partial codification of the equitable doctrine of fair use as an affirmative defense to copyright infringement that has long been a part of the common law of copyright. The Supreme Court recounted the history of this equitable defense in *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539 (1985), and commented that it is predicated on a theory of an author's implied consent to reasonable and customary use when he releases his work for public consumption. *Id*. at 550. That theory is not applicable here because the infringing parties are exploiting a market for movies that is different from what the Studios have released into and for an audience the Studios have not sought to reach.

Accepting all of the counterclaim defendants' factual allegations as true, the fair use defense is not applicable to this case. But because the infringing copies of these movies are not used in a transformative manner, they are not derivative works and do not violate § 106(2).

The counterclaim defendants assert the "first sale" doctrine as another affirmative defense. That doctrine protects the purchaser in any use of the authorized copy acquired but does not permit the making of additional copies. The Studios have made clear that they are not asserting that the use of a lawfully acquired copy in making the digital master copy is an infringement; they are asking this Court to prevent the use of that master copy in making the edits and creating the

copies that are distributed to the public. Accordingly, the first sale doctrine has no relevance to this case.[3]

Counterclaim defendants CleanFilms, Family Flix, and Play It Clean in their replies raised waiver, estoppel and laches as additional affirmative defenses but they have failed to provide any support for them.

The counterclaim defendants argue the grant of the requested injunction would destroy their businesses and deprive the public of the benefit of seeing these movies without offending their sensibilities to the deleted material. They rely heavily on *Williams & Wilkins Co. v. United States*, 487 F.2d 1345 (Ct. Cl. 1973), *aff'd,* 420 U.S. 376 (1975), in their claim that in weighing the equities to determine whether an injunction under § 502 is a reasonable remedy, the court must recognize the loss to the public of this viewing experience against the lack of any lost revenue to the Studios. They say there is no economic loss because the Studios are not in the same market and their sales have increased under the one-to-one policy requiring purchase of the originals.

In *Williams & Wilkins*, the court, in a divided opinion, held that government libraries' photocopying of medical journals for use by researchers should be considered fair use because medical science would be seriously hurt if such copying were stopped. The dissenting judges were sharply critical of the majority view and it has not become a guiding precedent, particularly

---

[3]The Studios have not claimed that this initial copying is a violation of the Digital Millennium Copyright Act, Pub. L. No. 105-304, 112 Stat. 2860 (1998), but assert that such a claim could be made.

because of the unique factual context.  At any rate, the entertainment value of in-home viewing of the edited films does not equate with the advancement of medical science.  Under the facts of this case, the presumed destruction of the counterclaim defendants' businesses is not a justification for denying these copyright holders - - the Studios - - the right to control the reproduction and distribution of the protected work in their original form.  The Studios have not asked for damages for any loss of revenue to them; they have not sought to recover the counterclaim defendants' profits and they do not ask for statutory damages under 17 U.S.C. § 504.  Their objective in the motion for partial summary judgment is to stop the infringement because of its irreparable injury to the creative artistic expression in the copyrighted movies. There is a public interest in providing such protection despite the injury the infringers may sustain. Their business is illegitimate.

Upon the foregoing, it is

ORDERED that:

1. The Studios' motion for partial summary judgment is granted as to their claim for copyright infringement under 17 U.S.C. § 106(1), the infringement of their right to reproduce their copyrighted works, against counterclaim defendants CleanFlicks, LLC and Family Flix, USA, LLC.

2. The Studios' motion for partial summary judgment is denied as to their claim for copyright infringement under 17 U.S.C. § 106(2), the infringement of the right to create derivative works, against counterclaim defendants CleanFlicks, LLC and Family Flix, USA, LLC.

3. The Studios' motion for partial summary judgment is granted as to their claim for

copyright infringement under 17 U.S.C. § 106(3), the infringement of their right to distribute their copyrighted works, against all counterclaim defendants, CleanFlicks, LLC; ASR Management Corporation d/b/a CleanFilms f/k/a MyCleanFlicks; Family Flix, USA, LLC; and Play It Clean Video, LLC.

4.  The Studios' motion for partial summary judgment is granted against Play It Clean Video, LLC on its claim for declaratory relief that its actions in distributing the Studios' copyrighted works are non-infringing.

5.  The Studios' motion for partial summary judgment of dismissal is granted as to the counterclaim defendants' affirmative defense of fair use under 17 U.S.C. § 107.

6.  The Studios' motion for partial summary judgment of dismissal is granted as to the counterclaim defendants' affirmative defense of the first sale doctrine under 17 U.S.C. § 109(a).

7.  The Studios' motion for partial summary judgment of dismissal is granted as to counterclaim defendants ASR Management Corporation d/b/a CleanFilms f/k/a MyCleanFlicks', Family Flix, USA, LLC's, and Play It Clean Video, LLC's affirmative defenses of estoppel, laches and waiver.

8.  CleanFlicks, LLC and Family Flix, USA, LLC, their officers, agents, servants, and employees, and all persons in active concert or participation with any of them are permanently enjoined and restrained from:

(i) Producing, manufacturing, creating, designing, selling, renting (in any format, including VHS tape, DVD and/or DVDR), advertising, marketing (including, without limitation, on television, in print media and on the Internet), offering for sale or rent, merchandising,

14

distributing, providing, importing, promoting, displaying, and/or publicly performing unauthorized edited, or otherwise altered, copies of any motion picture, the copyright in which is owned or controlled by any of the Studios; and

(ii) Engaging in any acts contributing to and/or assisting any of the foregoing.

9. ASR Management Corporation d/b/a CleanFilms f/k/a MyCleanFlicks and Play It Clean Video, LLC, their officers, agents, servants, and employees, and all persons in active concert or participation with any of them are permanently enjoined and restrained from:

(i) Selling, renting (in any format, including VHS tape, DVD and/or DVDR), advertising, marketing (including, without limitation, on television, in print media and on the Internet), offering for sale or rent, merchandising, distributing, providing, importing, promoting, displaying, and/or publicly performing unauthorized edited, or otherwise altered, copies of any motion picture, the copyright in which is owned or controlled by any of the Studios; and

(ii) Engaging in any acts contributing to and/or assisting any of the foregoing.

10. Within five (5) business days of the date of this Order, CleanFlicks, LLC; ASR Management Corporation d/b/a CleanFilms f/k/a MyCleanFlicks; Family Flix, USA, LLC; and Play It Clean Video, LLC, their officers, agents, servants, and employees, and all persons in active concert or participation with any of them shall deliver to counsel for the Studios for destruction all unauthorized edited, or otherwise altered, copies or versions of any motion picture in their possession, custody and control the copyright in which is owned or controlled by any of the Studios.

11. Within five (5) business days of the date of this Order, CleanFlicks, LLC; ASR

Management Corporation d/b/a CleanFilms f/k/a MyCleanFlicks; Family Flix, USA, LLC; and Play It Clean Video, LLC shall each execute and deliver to counsel for the Studios an affidavit confirming that all materials set forth in Paragraph 10 have been delivered to counsel for the Studios in accordance with said paragraph and that it is no longer in possession, custody or control of any such items.

DATED: July 6, 2006

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge